Clerk's Office
Filed Date:

3/30/2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHN TRISVAN,

                Plaintiff,

      v.

BURGER KING CORPORATION,
RESTAURANT BRANDS INTERNATIONAL,
and TIM HORTONS INCORPORATED,

                Defendants.

---------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
19-CV-6396 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action against Defendant Burger King Corporation ("Burger King") on November 6, 2019, alleging that he suffered food poisoning after eating at a Burger King restaurant in Brooklyn, New York, and seeking relief pursuant to the Federal Trade Commission Act of 1914, 15 U.S.C. §§ 45 and 52, and Article 2 of the Uniform Commercial Code (the "U.C.C."). (Compl. 1, 3–4, Docket Entry No. 1.)[1] By Memorandum and Order dated March 2, 2020, the Court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed Plaintiff to file an amended complaint within thirty days. (Mem. and Order dated Mar. 2, 2020, Docket Entry No. 5.) On April 1, 2020, Plaintiff filed an Amended Complaint adding Restaurant Brands International ("Restaurant Brands") and Tim Hortons Incorporated ("Tim Hortons") as Defendants and seeking relief for the alleged U.C.C. violation pursuant to the Court's diversity jurisdiction.

---

[1] Because the Complaint and subsequent amended complaints are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

(Am. Compl., Docket Entry No. 7.)  By Memorandum and Order dated April 24, 2020, the Court dismissed Plaintiff's Amended Complaint without prejudice for lack of subject matter jurisdiction and allowed him to file a second amended complaint within thirty days.  (Mem. & Order dated Apr. 24, 2020, Docket Entry No. 8.)  On May 22, 2020, Plaintiff filed a Second Amended Complaint ("SAC") against Burger King, Restaurant Brands, and Tim Hortons reasserting his state law claim under the U.C.C. and adding claims that Defendants violated the "Sherman/Clayton Act" and the Magnuson-Moss Warranty Act.[2]  (SAC 4, 6–7, Docket Entry No. 9.)  For the reasons set forth below, the Court dismisses the SAC.

## I. Background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

Plaintiff alleges that on November 6, 2016, he purchased food from a Burger King restaurant located at 1297 Fulton Street in Brooklyn and "began having abdominal pains" after "eating the meal at his residence."  (*Id.* at 3.)  Plaintiff sought medical treatment at Woodhull Medical Center, "where . . . it was confirmed that [he] was suffering [from] a viral infection stemming from goods consumed from Defendant's establishment" and he was diagnosed with "gastroenteritis[,] colitis, and cystitis."  (*Id.*)  Plaintiff later discovered that the same Burger King had been "penalized" in 2014 and 2015 for failing to maintain food at proper temperatures and

---

[2] Plaintiff has brought similar actions against various entities asserting claims under the Clayton Act, the Magnuson-Moss Warranty Act, and the U.C.C. based on alleged food poisoning.  *See Trisvan v. Regal Ent. Grp.*, No. 21-CV-187, 2021 WL 620981, at *5 (E.D.N.Y. Feb. 17, 2021) (dismissing complaint); *Trisvan v. Ky. Fried Chicken Corp.*, No. 20-CV-2071, 2021 WL 327728, at *5 (E.D.N.Y. Feb. 1, 2021) (dismissing amended complaint); *Trisvan v. Checkers Drive-In Rests., Inc.*, No. 16-CV-7000, 2020 WL 906635, at *6–7 (E.D.N.Y. Feb. 18, 2020) (dismissing fourth amended complaint), *appeal dismissed*, No. 20-1271 (2d Cir. Oct. 1, 2020).

that it had been fined twice in 2016, once in 2017, and twice in 2019 for sanitary violations. (*Id.* at 4–5.) In addition, Plaintiff learned that "traces of equine, rat, and swine meat [have been] found in [Defendants'] meat products" generally. (*Id.* at 5.)

Plaintiff alleges that Defendants engaged in "deceptive and unfair acts . . . that failed to conform to safety regulations and provisions" by selling him goods that were "not suitable for sale" in violation of the U.C.C. (*Id.* at 5, 7.) Plaintiff also alleges that Defendants engaged in "fraudulent monopolistic behavior, false advertisement[,] and deceptive marketing" in violation of the "Sherman/Clayton Act" and the Magnuson-Moss Warranty Act by selling meat products that have been found to contain traces of pork, which Plaintiff cannot eat due to his Muslim faith. (*Id.* at 5–6.) Plaintiff seeks $300,000 in "punitive and compensatory relief." (*Id.* at 7.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, a court must be mindful that a plaintiff's pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also*

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

In addition, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under [Rule 12(b)(1) of the Federal Rules of Civil Procedure] for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it.'" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed.").

    a.  **Plaintiff fails to state his federal claims**

Plaintiff appears to invoke the Court's federal question jurisdiction by citing the "Sherman/Clayton Act" and the Magnuson-Moss Warranty Act. (SAC 6–7.)

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700–01. "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the

4

amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ---, ---, 139 S. Ct. 1743, 1746 (May 28, 2019) (alteration in original).  Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331).  A plaintiff properly invokes section 1331 jurisdiction when he or she pleads a colorable claim "arising under" the Constitution or laws of the United States.  *Id.*; *see also Fairfield Cnty. Medical Ass'n v. United Healthcare of New Eng., Inc.*, 557 F. App'x 53, 55 (2d Cir. 2014) ("A cause of action 'arises under' federal law and thus confers subject matter jurisdiction pursuant to 28 U.S.C. § 1331 'when the plaintiff's "well-pleaded complaint" raises an issue of federal law.'" (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012))).

> **i. Antitrust Claims**

Plaintiff alleges that he was "acting as [a] consumer and business man engaged in a business/contractual transaction" when he "bought goods from Defendants' business establishment to sell," and that Defendants, "unbeknownst to Plaintiff[,] were involved in bad monopolistic conduct, leaving such business transaction ob[t]ained under fraud in violation of the Sherman/Clayton Act."  (SAC 6.)

"Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States.'" *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019) (alteration in original) (quoting 15 U.S.C. § 1).  However, "[s]ection 1 of the Sherman Act does not itself provide a private right of action."  *In re Publ'n Paper Antitrust Litig.,* 690 F.3d 51, 62 (2d Cir. 2012).

5

Rather, "[s]ection 4 of the Clayton Act establishes a private right of action for violation of federal antitrust laws, permitting 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws' to sue in federal court." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d Cir. 2019) (quoting 15 U.S.C. § 15(a)); *In re SSA Antitrust Bonds Litig.*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) ("[T]he private right of action to pursue antitrust claims is provided by the Clayton Act[.]" (second alteration in original) (quoting *In re Vitamin C Antitrust Litig.*, No. 05-CV-453, 2012 WL 12355046, at *5 (E.D.N.Y. Aug. 8, 2012))); *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) ("At the threshold, [the] [p]laintiff cannot actually sue directly under the Sherman Act, 15 U.S.C. § 1, because 'Section 1 of the Sherman Act does not itself provide a private right of action.'" (quoting *In re Publ'n Paper Antitrust Litig.,* 690 F.3d at 62)). "Despite the broad language of the statute, courts have carefully parsed antitrust standing in order to avoid counter-productive use of antitrust laws in ways that could harm competition rather than protecting it." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999)). Standing is required because "the purpose of the Clayton Act's private right of action is not 'to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation,' but only for injuries 'of the type that the antitrust statute was intended to forestall.'" *Eastman Kodak Co.*, 936 F.3d at 94 (quoting *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535, 540 (1983)). "To satisfy the antitrust standing requirement, a private antitrust plaintiff must demonstrate that (1) it has suffered 'a special kind of antitrust injury,' and (2) it is an 'efficient enforcer' of the antitrust laws." *Id.* (quoting *Port Dock & Stone Corp.*, 507 F.3d at 121). Courts "employ a three-step process for determining whether a plaintiff has sufficiently alleged antitrust injury," under which

they (1) consider whether "the party asserting that it has been injured by an illegal anticompetitive practice [has] 'identif[ied] the practice complained of and the reasons such a practice is or might be anticompetitive'"; (2) consider "how the practice identified by the plaintiff put the plaintiff in a 'worse position'"; and (3) compare the "'anticompetitive effect of the specific practice at issue' to 'the actual injury the plaintiff alleges.'" *Id.* (quoting *Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013)). After determining that a plaintiff has "cleared the antitrust-injury hurdle," courts determine whether the plaintiff is an "efficient enforcer" of the antitrust laws by evaluating:

> (1) "the directness or indirectness of the asserted injury," (2) "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement," (3) "the speculativeness of the alleged injury," and (4) "the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries."

*IQ Dental Supply Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 65 (2d Cir. 2019) (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443 (2d Cir. 2005)). "These four factors need not be given equal weight: the relative significance of each factor will depend on the circumstances of the particular case." *Id.* (citing *Daniel*, 428 F.3d at 443).

Plaintiff's conclusory allegation that he was injured is insufficient to show that he has suffered the special kind of antitrust injury required for standing to bring a private antitrust claim. (SAC 6); *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290–91 (2d Cir. 2006). In addition, despite Plaintiff's statement of a purported business relationship with Defendants based on his purchase of food at a Burger King restaurant, there is nothing in the SAC to suggest a claim arising from or connected to any anticompetitive behavior by Defendants in violation of the Sherman or Clayton Acts. (*See generally* SAC.) Therefore, construing Plaintiff's allegations to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild*

7

*for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)), the Court finds that Plaintiff not only lacks statutory standing to bring an antitrust claim but also fails to allege any facts to support a substantive antitrust violation. *Ramnarine v. Nationstar Mtge., LLC*, No. 19-CV-5544, 2019 WL 7038430, at *2 (E.D.N.Y. Dec. 20, 2019); *Ruotolo*, 933 F. Supp. 2d at 519. Therefore, the Court dismisses Plaintiff's antitrust claims. *See* 28 U.S.C. § 1915(e)(2)(B).

    ii.    **Magnuson-Moss Warranty Act Claims**

        1.    **The Court lacks subject matter jurisdiction over Plaintiff's claims**

Plaintiff alleges that Defendants violated "express[] and implied warrant[ies] under the Magnuson Moss Warranty Act" by selling him food that "was not suitable for sale or up to par" based on Defendants' "description given in its advertisements [that its hamburgers are] 100% beef, which according to various reports as well as their own independent studies" is false because its hamburgers "[have] contained pig, horse, and rat meat." (SAC 6–7.)

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "MMWA") "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Pyskaty v. Wide World Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)). The MMWA "permits 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty [or] implied warranty . . . [to] bring suit for damages and other legal and equitable relief." *Id.* (alterations in original) (quoting 15 U.S.C. § 2310(d)(1)). However, the MMWA provides, in pertinent part, that "[n]o claim shall be cognizable . . . if the amount in controversy of any individual claim is less than the sum or value of $25" or "if the amount in

8

controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(A), (B); *Pyskaty*, 856 F.3d at 222 (stating same); *Abedrabbo v. Topps Meat Co.*, 756 F. Supp. 2d 18, 23 (D.D.C. 2010) (same). In addition, the MMWA specifically precludes recovery for personal injury. It states in relevant part: "Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury." 15 U.S.C. § 2311(b)(2); *see Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1038 (9th Cir. 2004) (dismissing the plaintiff's claim under the MMWA where the plaintiff sought damages for "loss of enjoyment of retirement," finding such "loss of enjoyment" to be "precisely the type of relief potentially available under state law but not under the [MMWA]").

Plaintiff's MMWA claims seek recovery for personal injuries he sustained as a result of food poisoning and are therefore not cognizable under the MMWA. *See Abedrabbo*, 756 F. Supp. 2d at 23 (dismissing the plaintiff's MMWA claim where the plaintiff attempted to recover for personal injuries he sustained, including abdominal cramps, diarrhea, and fatigue, because of the defendant's beef products). Therefore, the Court dismisses Plaintiff's claims under the MMWA for lack of subject matter jurisdiction.

### 2. Plaintiff fails to state a claim under the MMWA

Even assuming that Plaintiff properly invokes the Court's subject matter jurisdiction, his allegation that Defendant's burgers were not "100% beef" are insufficient to support his claims for breach of a written warranty and breach of an implied warranty.

As noted above, the MMWA "permits 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty [or] implied

9

warranty . . . [to] bring suit for damages and other legal and equitable relief." *Pyskaty*, 856 F.3d at 222 (alterations in original) (quoting 15 U.S.C. § 2310(d)(1)). The MMWA defines "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*.

*Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-1291, 2021 WL 355405, at *14 (S.D.N.Y. Feb. 2, 2021) (quoting 15 U.S.C. § 2301(6)(A)); *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808, 2018 WL 9346682, at *11 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020). "As the relevant regulations make clear, a 'product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.'" *Chufen Chen*, 2018 WL 9346682, at *11 (quoting 16 C.F.R. § 700.3); *see also* 16 C.F.R. § 700.3 (stating that, unlike the U.C.C., the MMWA "provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty'" and that "[a] 'written warranty' is also created by a written affirmation of fact or a written promise that the product is defect free"). In addition, "[t]he MMWA defines 'implied warranty' as 'an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer good.'" *Pyskaty v. Wide World Cars, LLC*, No. 15-CV-1600, 2019 WL 917153, at *11 (S.D.N.Y. Feb. 25, 2019) (quoting 15 U.S.C. § 2301(7)). Under New York law, "[t]he implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris U.S., Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789

(App. Div. 1997)). "A merchant breaches the UCC implied warranty of merchantability if it sells goods that are not 'fit for the ordinary purposes for which such goods are used." *Id.* (quoting U.C.C. § 2-314(2)(c)). "This standard does not require that the goods be perfect or that they 'fulfill [a] buyer's every expectation'; it requires only that the goods sold be of 'a minimal level of quality.'" *Id.* at 433–34 (alteration in original) (citations omitted) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 n.4 (1995)); *Bustamante v. Atrium Med. Corp.*, No. 18-CV-18395, 2020 WL 583745, at *9 (S.D.N.Y. Feb. 6, 2020) ("Under the New York Uniform Commercial Code, '[t]o establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose . . . .'" (alteration in original) (quoting *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420–21 (S.D.N.Y. 2011))). "Where the sale of a food or beverage is concerned, courts have ruled that the product must be fit for human consumption to be of merchantable quality." *Poppies Int'l, Inc. v. Abel & Schafer, Inc.*, No. 18-CV-1795, 2020 U.S. Dist. LEXIS 60363, at *16 (E.D.N.Y. Mar. 31, 2020) (quoting *Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc.*, No. 14-CV-2902, 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018)); *see also United States v. Hamden Co-op. Creamery Co.*, 297 F.2d 130, 134 (2d Cir. 1961) ("Inasmuch as its milk powder was not fit for human consumption, the appellant breached its implied warrant[y] of . . . merchantability.").

Even if Plaintiff's claims were cognizable, "100% beef" does not constitute a written warranty under the MMWA because it does not include any specified time period or warrant a product free from defect. *See, e.g., Chufen Chen*, 2018 WL 9346682, at *6 (granting motion to dismiss MMWA claim for breach of written warranty where "Angus steak" sandwich and wrap allegedly contained non-Angus beef and additives based on finding that the term "Angus steak"

11

is a product description rather than a warranty because it "does not include any specified time period"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) ("An 'All Natural' label does not warrant a product free from defect. Nor does it constitute a promise that the product 'will meet a specified level of performance over a specified period of time.' Such labels are, 'at most, product descriptions.'" (citations omitted) (quoting *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-CV-1586, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)) (collecting cases); *Wilson*, 2013 WL 1320468, at *13 (finding that "All Natural" label is not an assertion that a product is defect free or will meet a specified level of performance over time). Nor can this allegation support Plaintiff's MMWA claim for breach of the implied warranty of merchantability, for even if the burgers Defendant sold to Plaintiff contained traces of meats other than beef, Plaintiff cannot show that they were therefore not reasonably fit for their intended purpose of human consumption. *Cf. Mongiello's Italian Cheese Specialties, Inc.*, 2018 WL 4278284, at *38 (finding that the plaintiff met its burden of establishing that the defendant breached the implied warranty of merchantability because it demonstrated that the defendant sold it meat that was contaminated with Listeria monocytogenes).

Accordingly, the Court dismisses Plaintiff's claims under the Sherman Act and the Clayton Act with prejudice and dismisses Plaintiff's claims under the MMWA without prejudice.

### b. The Court lacks subject matter jurisdiction over Plaintiff's state law claim

Plaintiff invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 with regard to his state law claim under the U.C.C. (SAC 2.)

As discussed above, the statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Under the diversity jurisdiction statute, federal courts

12

have subject matter jurisdiction over state law claims where all plaintiffs and all defendants are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties . . . ." (citing 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants."); *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). "For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische*, 692 F.3d at 48 (citing 28 U.S.C. § 1332(c)(1)); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"). In addition, "[f]ederal diversity jurisdiction requires an amount in controversy of at least $75,000 . . . [and] this amount is measured as of the time that a complaint is filed," *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154–55 (D. Conn. 2016) (citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005)), "and it is established by the face of the complaint and the dollar amount actually claimed, *id.* (first citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); and then citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)); *see also Hall*, 396 F.3d at 506 (noting that "[g]enerally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events"). "Generally, the plaintiff, as the party asserting subject matter jurisdiction, has the burden of

13

proving that it exists by a preponderance of the evidence." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) (citing *Makarova*, 201 F.3d at 113); *see also Scherer*, 347 F.3d at 397 ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994))); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (same); *see also Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019). The amount in controversy must be non-speculative in order to satisfy the statute, and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient. *See Valente v. Garrison from Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that [an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

In addition, where the jurisdictional amount includes punitive damages, those punitive damages will be considered with heightened scrutiny. *See Pyskaty*, 856 F.3d at 225 ("[I]n computing [the] jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972))); *see also Peoples Club of Nigeria Int'l v. Peoples Club of Nig. Int'l*, 821 F. App'x 32, 35 (2d Cir. 2020) (same); *Nwanze v. Time, Inc.*, 125 F. App'x 346, 349–50 (2d Cir. 2005) (finding the plaintiff's "demand for five million dollars' punitive damages based on his claims that [the defendant] fraudulently induced him into subscribing to magazines with promises of multi-million dollar prizes — with unspecified or no actual damages" insufficient to meet amount-in-controversy requirement); *Cohen v. Narragansett Bay Ins. Co.*, No. 14-CV-3623, 2014 WL 4701167, at *3 n.4 (E.D.N.Y.

14

Sept. 23, 2014) ("[T]he Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages.").

Although Plaintiff alleges that the parties are diverse,[3] he fails to meet his burden to show that the amount in controversy meets the statutory threshold. Plaintiff states that the amount in controversy includes:

> [the] cost of meals in question over the course of 3 years (an average of $500 per week totaling an average of $72,000) [and] the cost of one's injury, as well as the cost of Plaintiff's business dealings with Defendants, and such trip to the hospital Emergency Room (hereafter "ER")/hospital bills brought to Plaintiff and his insurance company totaling $4300[]; bills of prescription and pharmaceutical drugs cost to Plaintiff and his insurance company (totaling $100) compensatory as well as punitive damages . . . .

(SAC 2–3.) However, Plaintiff cannot include the "cost of his meals over the course of 3 years" to reach the amount in controversy requirement, as those meals are not at issue.[4] (*Id.*) Further,

---

[3] Plaintiff alleges that he is a citizen of New York, that Burger King has its principal place of business in Florida, and that Restaurant Brands and Tim Hortons have their principal places of business in Canada. (SAC 1–2.)

[4] In addition, the Court notes that Plaintiff represented in his motion to proceed *in forma pauperis* ("IFP"), which the Court granted, that his monthly food budget is $192 dollars. (Mot. to Proceed IFP, Docket Entry No. 2; Mem. and Order dated Mar 2, 2020, at 1, Docket Entry No. 5.) In an attempt to meet the amount-in-controversy requirement, Plaintiff now alleges that he purchased an average of $500-worth of Burger King every week for three years, totaling $72,000. (SAC 2–3.) In light of Plaintiff's representations in his IFP application, Plaintiff has not demonstrated a reasonable probability that the amount-in-controversy is met. *See Pyskaty v. Wide World Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (noting that "a plaintiff invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied" and that the "presumption that the face of the complaint is a good faith representation of the actual amount in controversy" is rebutted where "the damages alleged were feigned to satisfy jurisdictional minimums" (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006))); *Sprayregen v. Mangiameli*, No. 14-CV-6419, 2016 WL 264934, at *3 (E.D.N.Y. Jan. 21, 2016) (noting that presumption can be rebutted "when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction" (quoting *Brown v. N.Y. State Sup. Ct. for Second Jud. Dist.*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010))); *Mastor v. Newmann*, No. 08-CV-802, 2009 WL 1706648,

Plaintiff does not provide the amount involved in "the cost of Plaintiff's business dealings with Defendants." (*Id.* at 3.) Based on Plaintiff's pleadings, he sustained food poisoning on November 6, 2016, for a "Whopper meal" purchased at Burger King and he sought medical treatment thereafter. (*Id.*) Thus, it appears that even when allowing for his purported medical expenses of $4400 and the cost of the food at issue (unspecified), Plaintiff fails to show that his compensatory damages exceed an amount in controversy of $75,000.

In addition, Plaintiff fails to provide a basis for seeking punitive damages for the alleged food poisoning, making his request for punitive damages speculative. *See Centra Devs. Ltd. v. Jewish Press Inc.*, No. 16-CV-6737, 2018 WL 1788148, at *5 (E.D.N.Y. Feb. 20, 2018) (finding a lack of subject matter jurisdiction despite the plaintiff's allegations of "$3,000,000 in punitive damages" because the "[p]laintiff's complaint fail[ed] to allege any other out-of-pocket expenses it has incurred, except attorney's fees"), *report and recommendation adopted*, 2018 WL 1445574 (E.D.N.Y. Mar. 23, 2018); *see also Cohen*, 2014 WL 4701167, at *3 n.4 ("[T]he Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages."); *Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 4495184, at *2 (E.D.N.Y. Aug. 14, 2013) ("Plaintiff's demand for punitive and other additional damages, unsupported by the law or the allegations in the amended complaint, is not sufficient to satisfy the amount-in-controversy requirement.").

After two opportunities to satisfy the amount-in-controversy requirement, Plaintiff has failed to provide a basis for seeking $300,000 in punitive and compensatory damages for the

---

at *3 (W.D.N.Y. June 16, 2009) (noting that dismissal is appropriate "in circumstances where 'the district court can justifiably conclude that the amount demanded was inflated solely in order to gain access to the federal courts'" (quoting *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 99–100 (2d Cir. 1966))).

alleged food poisoning. Therefore, Plaintiff's request for relief is insufficient to meet the amount in controversy required for the Court to exercise diversity jurisdiction over this matter. Fed. R. Civ. P. 12(h)(3).

### III. Conclusion

Accordingly, the Court dismisses with prejudice Plaintiff's claims under the Sherman Act and the Clayton Act for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismisses without prejudice Plaintiff's claims under the Magnuson-Moss Warranty Act and the U.C.C. for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to enter judgment, mail a copy of this Memorandum and Order to Plaintiff, and close this case.

Dated: March 30, 2021
       Brooklyn, New York

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge